# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 7 |
| ) | |
| WL HOMES LLC, *et al.*,[1] ) | Case No. 09-10571 (BLS) |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | |
| ) | |
| GEORGE L. MILLER, CHAPTER 7 ) | |
| TRUSTEE FOR THE ESTATE OF WL ) | |
| HOMES, LLC, *et al.*, ) | |
| ) | Adv. 11-50839 (BLS) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ZURICH AMERICAN INSURANCE ) | |
| COMPANY, ZURICH NORTH AMERICA ) | |
| And STEADFAST INSURANCE ) | |
| COMPANY, ) | Re: Adv. Docket Nos. 59, 63, 66, 75 |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| Joseph J. McMahon, Jr., Esquire | Karen Lee Turner, Esquire |
| Ciardi Ciardi & Astin | Eckert Seamans Cherin & Mellott, LLC |
| 1204 N. King Street | 300 Delaware Avenue, Suite 1210 |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| | |
| and | *Counsel for Zurich American Insurance Company, Zurich North America and Steadfast Insurance Company* |
| Daniel K. Astin, Esquire | |
| John D. McLaughlin, Jr., Esquire | |
| Albert A. Ciardi, III, Esquire | |
| Nicole Nigrelli, Esquire | |
| One Commerce Square, Suite 3500 | |
| 2005 Market Street | |
| Philadelphia, PA 19103 | |

---

[1] The Debtors in these cases, along with the last four digits of each of the Debtors' federal tax identification numbers, are: WL Homes LLC (6595); JLH Realty & Construction, Inc. (1899); JLH Arizona Construction, LLC (2154); WL Texas LP (0079); WL Homes Texas LLC (0103); and Laing Texas LLC (0052).

1

and

Steven M. Coren, Esquire
David M. DeVito, Esquire
Two Commerce Square
2001 Market Street, Suite 3900
Philadelphia, PA 19103

*Counsel for Chapter 7 Trustee*

# OPINION[2]

Before the Court is the Motion for Partial Summary Judgment (the "Motion") [Adv. Docket No. 59] filed by the Chapter 7 Trustee for the Estate of WL Homes, LLC.  The Trustee contends that he is entitled to turnover of approximately $2.2 million in insurance premium overpayments – called a "return premium" – from Zurich American Insurance Company ("Zurich").  Zurich defends against turnover by asserting affirmative defenses of setoff or recoupment for amounts actually spent defending and settling construction defect claims against WL Homes as insured, and Zurich as insurer.  For the reasons stated below, the Trustee's Motion is denied.

## I. BACKGROUND

Before its 2009 bankruptcy filing, WL Homes ("WL" or the "Debtor") was among the nation's largest and most respected homebuilders, building everything from entry-level condos to multi-million dollar mansions.  In 2002, WL took out a Home Builders Protective Insurance Policy with Zurich (the "Policy").  The Policy was renewed four times between 2002 and 2009, with the final renewal occurring in May 2007 and running through May 2009.  The Policy was in effect when WL commenced its bankruptcy case on February 19, 2009.

During that final term, the Policy covered WL Homes for damages and defense costs relating to construction defects, among other things.  But the coverage only kicked in after WL Homes itself paid a

---

[2] This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure § 7052.

certain amount of those costs, defined as a self-insured retention ("SIR"). Specifically, Section IV. D of the Policy provides:

> Except for any "defense costs" that [Zurich is] obligated to pay [in] excess of the "self-insured retention," or that [Zurich] may elect to pay, [WL Homes] shall pay all such "defense costs" as they are incurred until [WL Homes] ha[s] paid "defense costs" and damages for the coverages included in the policy equal to the applicable "self-insured retention" amount. If any final judgment or settlement and "defense costs" is less than the "self-insured retention" amount stated above, [Zurich] shall have no obligation to pay damages or "defense costs" under this policy.

Some of the homes WL built over the years contained flaws, leading homeowners to file construction defect claims against the company. Several of the claims are large enough to implicate Zurich's coverage obligations under the Policy.

As noted, on February 19, 2009, WL filed a voluntary petition under Chapter 11 of the Bankruptcy Code. This Court converted that case to a Chapter 7 proceeding on June 5, 2009, and George L. Miller was promptly appointed to serve as the Chapter 7 Trustee. After WL Homes filed for bankruptcy, and in accordance with the Policy, Zurich performed an audit and determined that WL Homes had overpaid its premium obligations for the 2007 to 2009 term by roughly $2.2 million. Zurich filed a Motion for Relief from the Stay [Docket No. 1122] asserting that it was entitled to keep the $2.2 overpayment and apply it toward defending construction defect claims within the self-insured retention amounts. This Court ruled by Opinion dated May 16, 2012 that Zurich had not, at that time, established its rights to setoff under § 553 of the Bankruptcy Code and denied Zurich's Motion. *In re WL Homes LLC*, 471 B.R. 349, 350 (Bankr. D. Del. 2012).

The instant Motion arises in an adversary proceeding filed by the Trustee. In his complaint, Trustee seeks to avoid and recover certain preferential transfers, disallow certain claims, and obtain turnover of the Return Premium. Trustee filed the Motion seeking turnover of property of the estate, arguing that the $2.2 million Return Premium belongs to this Debtor's estate. Zurich defends against the Trustee's Motion by arguing that it holds setoff and recoupment rights for amounts paid post-petition on

construction defect claims covered under the Policy.[3] The issue has been fully briefed and argument was held. The Motion is ripe for decision.

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O).

### *STANDARD FOR SUMMARY JUDGMENT*

Rule 56 of the Federal Rules of Civil Procedure, made applicable hereto by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the court's function is not to weigh the evidence for the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the burden of establishing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. When the nonmoving party bears the burden of persuasion at trial, the moving party "may meet its burden… by showing that the nonmoving party's evidence is insufficient to carry that burden." *Foulk v. Donjon Marine Co., Inc.*, 144 F.3d 252, 258 n.5 (3rd Cir. 1998).

---

[3] Zurich points out in footnote 5 of its Reply Brief (p.24) that any recoupment claim by a creditor must arise under the same policy as the debt owed to the debtor. Therefore, it seeks recoupment for claims arising out of the 2007 to 2009 time period only.

Once the moving party has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Substantive law determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit will preclude summary judgment." *Anderson*, 477 U.S. at 248. A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The Court must resolve all doubts and consider the evidence in the light most favorable to the nonmoving party. *Id*. at 255.

### III. DISCUSSION

The doctrines of setoff and recoupment trace their origins back to the era of common law pleading. *Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir. 1984). Both doctrines have subsequently been adopted in bankruptcy proceedings: setoff by statute, *see* 11 U.S.C. § 553, and recoupment by decision, *see In re Monongahela Rye Liquors*, 141 F.2d 864 (3rd Cir. 1944). Setoff and recoupment play different roles in the context of bankruptcy. *Schweiker*, 739 F.2d at 875. Most importantly to the present analysis, the mutuality requirement embodied in § 553(a) prohibits the setoff of pre-petition claims against a debtor against post-petition debts of a debtor. *Id*. Recoupment, on the other hand, does not have a mutuality requirement and operates in some instances when setoff is unavailable to cancel out mutual debts. *Id*. Setoff is limited by the statutory guidelines of § 553, while recoupment is limited by the integrated transaction test, as outlined in *In re University Medical Center*. 973 F.2d 1065 (3rd Cir. 1992), and discussed more fully below.

*A. Recoupment*

Recoupment is an equitable remedy that permits the offset of mutual debts arising from the same transaction or occurrence. *In re Communication Dynamics, Inc.*, 300 B.R. 220, 225 (Bankr. D. Del. 2003). The doctrine of recoupment is defined as "the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of

5

such claim." *Id*. at 226 (quoting *In re University Medical Center*, 973 F.2d 1065, 1079 (3rd Cir. 1992)). The Third Circuit has explained:

> The doctrine is justified on the grounds that "where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable."

*University Medical Center*, 973 F.2d at 1079 (quoting *Schweiker*, 739 F.2d at 875).

"In bankruptcy cases, recoupment has often been applied where the relevant claims arise from a single contract 'that provide[s] for advance payments, based on estimates of what ultimately would be owed, subject to later correction." *University Medical Center*, 973 F.2d at 1080 (quoting *In re B&L Oil Co.*, 782 F.2d 155, 157 (10th Cir. 1986)). "However, an express contractual right is not necessary to effect a recoupment. Nor does the fact that a contract exists between the debtor and creditor automatically enable the creditor to effect a recoupment." *Id*. The simple "fact that the same two parties are involved, and that a similar subject matter gave rise to both claims … does not mean that the two arose from the 'same transaction.'" *Id*. at 1081 (quoting *Lee v. Schweiker*, 739 F.2d at 875). "Rather, both debts must arise out of a **single integrated transaction** so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Id*. at 1081 (emphasis added).

Trustee argues that Zurich's claim for recoupment fails as a matter of law under the Third Circuit's integrated transaction test for two reasons. First, recoupment is unavailable because the Policy does not include an express contractual claim for reimbursement: Trustee asserts Zurich's claim for recoupment fails the integrated transaction test as a matter of law because it arises from quasi-contract and not from express contract language in the Policy. Second, recoupment is unavailable to Zurich because the debts arise from discrete and independent units of the Policy.

Zurich responds that California state law supports its right to reimbursement even without express contractual language, and asserts that a contrary result would be a windfall for the Trustee. Zurich argues

that the obligation of the Debtors to pay SIR amounts arises out of the Policy, and the SIR amounts are integrally related to the calculation of the premium for the Policy. The SIR amount and the premium are thus interrelated elements considered in the overall transfer of risk contemplated between Zurich and the Debtor.

Here, the Policy between the parties contemplated a transfer of risk. The higher SIR threshold, the lower the premium that would be charged. Allowing the Trustee to recover the Return Premium while failing to pay amounts due under the SIR would be inequitable in that it would allow the Debtor to enjoy the benefits of the Policy without meeting its obligations under that Policy.

Trustee contends that Zurich's claim for recoupment must fail as a matter of law because it arises from discrete and independent units of the Policy. This argument, however, relies upon a standard adopted by the Second Circuit but not by the Third Circuit. In *Westinghouse Credit Corp. v. D'Urso*, the Second Circuit held that recoupment is not permitted even in integrated transactions when "the contract itself contemplates the business to be transacted as discrete and independent units." 278 F.3d 138, 147 (quoting *Malinowski v. N.Y. State Dep't. of Labor*, 156 F.3d 131, 135 (2nd Cir. 1998)). The Third Circuit's standard, articulated in *University Medical Center*, does not contemplate an analysis regarding whether or not the SIR and the Return Premium arise from discrete and independent units. Instead, the test focuses on the contractual relationship between the parties and whether the debts on both sides arise from an integrated transaction. *University Medical*'s integrated transaction test is regularly utilized in this District to determine the availability of recoupment. *See*, *e.g.*, *In re Prince Sports, Inc.*, 2013 WL 6906717, *1 (Bankr. D. Del. 2013) (finding that recoupment was available to offset a post-petition administrative rent claim against a pre-petition rent adjustment return); *In re Communications Dynamics, Inc.*, 300 B.R. 220 (Bankr. D. Del. 2003) (allowing for recoupment under a distribution contract that provided redeemable credits for sales made to end users).

The insurance contract at issue is made up of many interdependent economic features. First, WL pays a premium deposit that may be more or less than the amount it will owe. At the end of each year, an audit is performed to settle up:

> Within 180 days after this Coverage Part expires we will conduct an audit, which may not be waived. We will compute the earned premium for the policy period…. If the earned premium is greater than the sum of the deposit and any interim adjustment premiums, [WL] will pay us the excess; if less, [Zurich] will return the unearned portion to [WL].

Policy Endorsement #008. Next, the contract states that Zurich is not responsible for any amounts up to the SIR amount:

> Except for any "defense costs" that [Zurich is] obligated to pay [in] excess of the "self insured retention," or that [Zurich] may elect to pay, [WL] shall pay all such "defense costs" as they are incurred until [WL] ha[s] paid "defense costs" and damages for the coverages included in the policy equal to the applicable "self insured retention" amount. **If any final judgment or settle and "defense costs" is less than the "self insured retention" amount …, [Zurich] shall have no obligation to pay damages or "defense costs" under this policy.**

Section IV. D of the Policy (emphasis added).

Trustee argues that the lack of an express reimbursement clause is fatal to Zurich's claim for recoupment. It is true that Zurich's previous policies included a clause stating that "[WL] shall reimburse [Zurich] for the amounts [Zurich] pay[s] up to the applicable [SIR] amount." Section IV. 3(a) 2005-07 Policy. The Policy at issue here does not include such language. Regardless, Trustee is not correct in his assertion.

First, an express contractual right is not necessary to effect recoupment. *University Med.*, 973 F.2d at 1080. The lack of affirmative reimbursement language does not, by itself, eliminate Zurich's recoupment right. Considering the economic realities of this relatively standard insurance relationship, it makes little sense to suggest that Zurich has deliberately waived or foregone its right to be reimbursed if it pays amounts within the SIR. Further, the Supreme Court of California has held that a contractual right to reimbursement was not necessary in an insurance contract. They write:

8

> That the insurer does not have a right of reimbursement express[ed] in the policy does not mean that it does not have one implied in law. Rather, that it has an implied-in-law right helps explain why it does not have an express-in-policy one. The former renders the latter unnecessary.

*Buss v. Superior Court*, 16 Cal.4th 35, 51 n. 13 (1997).

This is an insurance contract. The SIR and the premium charged (or overcharged and returned) are interdependent economic features of the insurance contract. Therefore, the SIR and the premium are part of an integrated transaction. The SIR and the Return Premium, when taken together, form the economic basis of the insurance contract formed between Zurich and WL. To allow WL to enjoy the benefits of the Return Premiums and relieve it of the burden of the SIR would be inequitable. Thus, Zurich has carried its burden in asserting the affirmative defense of recoupment with regards to the SIR amounts actually paid by Zurich under the 2007-09 Policy against the Return Premium owed to the Trustee.

### IV. CONCLUSION

For the foregoing reasons, Trustee's Motion is denied.[4] An appropriate Order is attached.

Date: January 10, 2017

Brendan Linehan Shannon
Chief United States Bankruptcy Judge

---

[4] Zurich's reply and sur-reply briefs also raise the defense that Debtor is in breach of the Policy and therefore Trustee, standing in the shoes of the Debtor, cannot exercise the rights of the Debtor. Because the Court disposes of this matter on other grounds, it need not address Zurich's breach of contract argument.